IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY C. R., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:20-cv-00286-BT |
| | § | |
| KILOLO KIJAKAZI, | § | |
| ACTING COMMISSIONER OF | § | |
| SOCIAL SECURITY,[1] | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Mary C. R.'s[2] civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. (ECF No. 1). The District Court referred the case to the United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. (ECF No. 5). Subsequently, the parties consented to have a United States magistrate judge conduct any and all further proceedings,

---

[1] Ms. Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The Court directs the Clerk to amend the docket to reflect this change.

[2] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

including entry of a final judgment. (ECF No. 12). For the reasons explained below, the Court AFFIRMS the Commissioner's decision.

## Background

Plaintiff alleges she is disabled due to "a neck problem, a shoulder problem, a back problem, a knee problem, and anxiety." Pl.'s Br. 5 (ECF No. 21); Admin. R. (A.R.), pt. 1, at 66 (ECF No. 19-1). She was born in 1961 and was 54 years old on her alleged onset-of-disability date. *See* A.R., pt. 1, at 17, 209, 225. Plaintiff has a general-equivalency degree and can communicate in English. *Id.* at 41, 229. She has past work experience as a reservations representative. A.R., pt. 1, at 27, 42.

On April 20, 2017, Plaintiff applied for disability benefits and supplemental security income (SSI). *Id.* at 17. In both applications, Plaintiff alleged disability beginning May 1, 2007. *Id.* After her applications for disability benefits and SSI were denied initially and on reconsideration by the Commissioner, Plaintiff requested a hearing before an administrative law judge (ALJ) to determine whether she is disabled. *Id.* The hearing took place in Dallas, Texas, on November 5, 2018. *Id.* During the hearing, with the advice and consent of her representative, Plaintiff amended her alleged onset-of-disability date to April 1, 2016 and withdrew her request for disability benefits. *Id.* Therefore, the ALJ only considered whether Plaintiff qualified for SSI. *Id.* Plaintiff was 56 years old when she applied for SSI. Pl.'s Br. 6; *see id.* at 17, 209.

2

The ALJ determined Plaintiff was not disabled and therefore not entitled to SSI. A.R., pt. 1, at 18, 27. At step one of the five-step sequential evaluation,[3] the ALJ found Plaintiff had not engaged in substantial gainful activity since April 20, 2017. *Id.* at 19. At steps two and three, the ALJ found Plaintiff had severe impairments of degenerative disc disease, osteoarthritis, depression, bipolar and related disorders, anxiety, and obsessive-compulsive disorder, but Plaintiff's impairments, or combination of impairments, did not meet or equal the severity of any listed impairment in the social security regulations. *Id.* at 19-22. At step four, relying on the testimony of a vocational expert (VE), the ALJ found Plaintiff had the residual functional capacity (RFC) to perform a limited range of light work— including her past relevant work as a reservations representative. *Id.* at 22-26. The ALJ concluded Plaintiff is not disabled and, therefore, not entitled to SSI. *Id.* at 27.

---

[3] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

Plaintiff appealed the ALJ's decision to the Appeals Council. *See id.* at 6-9. The Council denied review. *Id.* at 6. Plaintiff then filed this action in federal district court, in which she contends the ALJ erred in finding her not disabled. Specifically, Plaintiff argues that the ALJ's disability determination and denial of benefits is not supported by substantial evidence. Pl.'s Br. 5.

## Legal Standards

The Court's "review of Social Security disability cases is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citation and internal quotations omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Copeland*, 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance." (internal quotation marks omitted) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)).

The ALJ, and not the courts, resolves conflicts in the evidence; thereafter, the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citation omitted). Hence, the Court may not substitute its own judgment for the ALJ's, and it may affirm only on the grounds that the ALJ stated to support his decision. *Copeland*, 771 F.3d at 923 (citation omitted).

## Analysis

Plaintiff argues substantial evidence does not support the ALJ's disability determination and denial of benefits because (1) the ALJ failed to provide good reasons as to the weight granted to the opinion of Plaintiff's treating physician, Dr. Alphonso; and (2) the ALJ failed to reconcile his RFC determination with the moderate limitations found on Plaintiff's ability to concentrate, persist, and maintain pace. Pl.'s Br. 2, 5, 12, 16.

The ALJ determined that Plaintiff had the RFC to perform light work "with additional mental restrictions in order to reflect her limitations." A.R., pt. 1, at 26. Specifically, the ALJ determined Plaintiff retained the mental RFC to understand, remember, and carry out detailed, but not complex tasks and instructions; make work related decisions; accept instructions; attend and concentrate for extended periods; frequently interact appropriately with supervisors, coworkers, and the general public; and respond appropriately to changes in a routine work setting.[4] *Id*. at 22. The ALJ determined Plaintiff's RFC "[a]fter careful consideration of the entire record." *Id*.

The ALJ bears the "sole responsibility for determining the [plaintiff's] disability status."[5] *Thibodeaux v. Astrue*, 324 F. App'x 440, 443 (5th Cir. 2009)

---

[4] The ALJ also listed other findings related to Plaintiff's physical RFC: Plaintiff can lift and/or carry 20 pounds occasionally; lift or carry ten pounds frequently; stand or walk, in combination, for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; and push or pull commensurate with lifting restrictions. A.R., pt. 1, at 22.

[5] 20 C.F.R. § 416.920c provides instruction for evaluating opinion evidence for

(citing *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)). "Determining a [plaintiff's RFC] is the ALJ's responsibility, and [the ALJ] has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam). After reviewing the hearing decision and the administrative record, the Court finds the ALJ's RFC determination is supported by substantial evidence.

(1) <u>The ALJ properly considered the opinions of Plaintiff's physician, Dr. Alphonso, when determining Plaintiff's RFC.</u>

Plaintiff first argues substantial evidence does not support the mental limitations determined by the ALJ because the ALJ failed to properly weigh Dr. Alphonso's opinion. Pl.'s Br. 12. When considering medical opinions, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a); *Stephens v. Saul*, 2020 WL 7122860, at *5 (N.D. Tex. Dec. 4, 2020) (citation omitted); *accord Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citation omitted). The ALJ must explain the persuasiveness of medical opinions. 20 C.F.R. § 416.920c(b). To determine the persuasiveness of each medical opinion, the ALJ considers supportability, consistency, relationship with the plaintiff,[6] specialization, and

---

claims filed on or after March 27, 2017, like Plaintiff's claim in this case filed on April 20, 2017. *See* A.R., pt. 1, at 17.

[6] When the ALJ determines the medical professional's relationship with the plaintiff, the ALJ considers length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of treatment relationship, and examining relationship. 20 C.F.R. § 416.920c(c)(3).

other factors that tend to support or contradict a medical opinion. *Id.* § 416.920c(c)(1)-(5). The most important factors are supportability and consistency. *Id.* § 416.920c(b)(2).

An ALJ will discuss how she considered the supportability and consistency factors for a medical source's medical opinions in her determination or decision. *Id.* The ALJ may, but is not required to, explain how she considered the remaining factors. *Id.* When a medical source provides multiple medical opinions, the ALJ will articulate how she "considered the medical opinions . . . from that medical source together in a single analysis using the factors," but she is not required to articulate how she considered each medical opinion from one medical source individually. *Id.* § 416.920c(b)(1).

"[F]undamentally, the ALJ cannot reject a medical opinion without an explanation." *Kneeland v. Berryhill*, 850 F.3d 749, 759-60 (5th Cir. 2017) (citation and internal quotations omitted); *accord Winston*, 755 F. App'x at 398. In explaining a rejection of a physician's opinion, the ALJ does not have "to state the weight given to each symptom and diagnosis in the administrative record." *Michelle K. M. v. Berryhill*, 2019 WL 1243355, at *13 (N.D. Tex. Mar. 18, 2019). An "ALJ's failure to mention a particular piece of evidence does not necessarily mean that [the ALJ] failed to consider it" when "the ALJ's decision states explicitly that [the ALJ] considered the entire record in [the ALJ's] decision." *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005). There is not a "statutorily or

judicially imposed obligation for the ALJ to list explicitly all the evidence [s]he takes into account in making h[er] findings." *See Hammond*, 124 F. App'x at 851.

In arriving at her RFC determination in this case, the ALJ explained that she "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." A.R., pt. 1, at 22. The ALJ also considered "the medical opinion[s] and prior administrative medical finding[s]." *Id*. Moreover, the ALJ considered "opinion evidence." *Id*. at 25. Finally, the ALJ determined the RFC after "reviewing all of the medical evidence." *Id*. at 26.

Plaintiff contends, however, that the ALJ erred when she determined that Dr. Alphonso's marked limitations are not supported by treatment notes. Pl.'s Br. 14 (citing A.R., pt. 1, at 26). According to Plaintiff, Dr. Alphonso "opined Plaintiff was markedly limited in several areas of functioning. [Dr. Alphonso] supported her opinion by stating it was based on the clinical history, Plaintiff's poor concentration, impaired recall, and her own assessment of Plaintiff's abilities over six years of treatment." Pl.'s Br. 14 (citing A.R., pt. 2, at 1709-11 (ECF No. 19-2)). Plaintiff further argues Dr. Alphonso's "opinion is consistent with the mental status examinations of record." Pl.'s Br. 14-15. And Plaintiff avers "the ALJ's discussion of the evidence was so sparse as to ignore positive findings from the very treatment notes [the ALJ] cited." *Id*. at 15. According to Plaintiff, since "the ALJ did not cite to specific examples in [the ALJ's] discussion of Dr. Alphonso's

8

opinion, [the ALJ] well and truly failed to craft a logical bridge from the copious evidence of record to her determination." *Id.*

In contrast to Plaintiff's contention, before discussing Dr. Alphonso's medical source statement, the ALJ provided a thorough explanation for her assessment of Plaintiff's mental RFC, including an analysis and description of the treatment notes inconsistent with Dr. Alphonso's marked-limitations opinion. The ALJ noted Plaintiff can "care for pets, prepare simple meals daily, do laundry, go outside, drive, shop in stores, and count change." A.R., pt. 1, at 23 (citing A.R., pt. 1, at 238-40, 265-67). The ALJ recognized "the longitudinal record shows a consistent history of treatment for [Plaintiff's] conditions, but none of the treatment has been significant or uncontrolled," and Plaintiff "has never been admitted inpatient for psychiatric care." *Id.* at 25. The ALJ observed "there is no evidence [Plaintiff] has received any other intense inpatient or outpatient treatment . . . .[,] ongoing psychotherapy, counseling, or any other type of treatment . . . . [because] treatment has all been limited to medication management." *Id.* In considering Plaintiff's medication management, the ALJ noticed Plaintiff's "treating physicians monitored her condition and adjusted her medications as needed" and "never recommended [Plaintiff] for any other therapy other than medication management." *Id.* Plaintiff's "conditions were never found to be uncontrolled." *Id.*

To support her analysis, the ALJ noted Dr. Alphonso's mental medical source statement on May 16, 2018. *Id.* at 26. According to the ALJ, "Dr. Alphonso

9

opined [Plaintiff] would have marked restriction in the ability to adapt to changes, manage her symptoms, set goals, maintain hygiene, be aware of hazards, or maintain social interactions." *Id*. Further, Plaintiff "would have moderate restriction in the ability to understand, remember, and carry out simple, repetitive, and routine tasks and instructions, and cooperate with others." *Id*. The ALJ found "Dr. Alphonso's opinion persuasive" as diagnoses, but Dr. Alphonso's "marked limitations [were] not supported by treating notes." *Id*.

Additionally, the ALJ considered multiple Global Assessment Functioning (GAF) scores, "which is a form of opinion." *Id*. According to the ALJ, "the GAF scores . . . were somewhat inconsistent, but were generally indicative of mild to moderate overall impairment." *Id*. Moreover, "a GAF rating may indicate problems that do not necessarily relate to the ability to hold a job; thus, standing alone without further explanation, the rating does not evidence an impairment seriously interfering with a [Plaintiff's] ability to work." *Id*. Accordingly, the ALJ assigned little weight to the GAF scores. *Id*.

After considering "the evidence of record as a whole," the ALJ noted the "State agency medical consultants' assessments of [Plaintiff's] functional capacity . . . well supported and [] not inconsistent with the medical evidence." *Id*. Therefore, the ALJ found "the State agency medical consultants' opinions persuasive." *Id*. To accommodate Plaintiff's mental-health limitations, the ALJ restricted Plaintiff "to light work with additional mental restrictions in order to reflect her limitations," restricting Plaintiff "to the ability to understand,

10

remember, and carry out detailed, but not complex, tasks and instructions." *Id*. at 25.

The ALJ did not reject Dr. Alphonso's opinion without an explanation. The ALJ stated the findings of the medical record, pointed out the inconsistencies the ALJ found, and through these findings, concluded that the medical record as a whole did not support Dr. Alphonso's marked limitations.

The ALJ was free to assign little or no weight to Dr. Alphonso's opinions inconsistent or unsupported by other evidence and incorporate only those limitations consistent with the weight of the evidence. The ALJ committed no error in giving Dr. Alphonso's marked limitations no weight because the ALJ concluded Dr. Alphonso's findings were not supported by treatment notes and consistent with the record as a whole. And the ALJ summarized and cited treatment notes of substantial evidence that supports her mental RFC assessment.

Furthermore, Plaintiff has not shown that credible evidentiary choices or medical findings do not support the ALJ's RFC finding. Instead, Plaintiff points this Court to other evidence in the record, such as a "mental status examination" that "revealed Plaintiff was irritable." Pl.'s Br. 15. And Plaintiff asks this Court to reconsider a doctor's note that Plaintiff "had slow, low volume speech; a reduced affect; a nervous and anxious mood; poor concentration; a poor abstract ability; and auditory hallucinations" when a doctor prescribed new medication to Plaintiff. *Id*. Plaintiff also notes a mental status report that "actually showed Plaintiff had a reduced affect, a depressed mood, impaired recall, and was not oriented to time

11

and situation." *Id*. But Plaintiff's "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Jones v. Saul*, 2021 WL 2895867, at *5 (N.D. Tex. July 9, 2021).

As explained above, the ALJ appropriately considered Dr. Alphonso's marked limitations. The ALJ's mental RFC determination is supported by substantial evidence and properly considered. Plaintiff's disagreement with the ALJ's RFC finding does not carry Plaintiff's burden of establishing that substantial evidence does not support the ALJ's determination. This Court cannot resolve conflicts of or reweigh the evidence.

(2) The ALJ adequately considered Plaintiff's mental-health limitations related to Plaintiff's ability to concentrate, persist, and maintain pace.

Plaintiff further contends at step three the ALJ found Plaintiff to be moderately limited in her ability to interact with others as well as concentrate, persist, and maintain pace, but at step four, the ALJ's mental RFC determination fails to account for the ALJ's step-three finding. Pl.'s Br. 16-17. Specifically, Plaintiff argues moderate limitations in a plaintiff's ability to concentrate, persist, and maintain pace cannot be accounted for in a mental RFC by limiting a plaintiff to simple tasks, and here, the ALJ limits Plaintiff to detailed tasks, which require higher-level reasoning than simple tasks, according to examples from the Dictionary of Occupational Titles (DOT). *Id*. at 17.

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-

by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." *McDaniel v. Saul*, 2020 WL 7687128, at *3 (N.D. Tex. Oct. 23, 2020). The functions in paragraphs (b), (c), and (d) relate to physical, mental, and other abilities. *Id.* The ALJ considers the nature and extent of the plaintiff's physical, mental, and other relevant limitations. 20 C.F.R. § 404.1545. The ALJ uses the "paragraph B criteria" to rate the degree of the plaintiff's mental limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a; *see id.*, pt. 404, subpt. P, app. 1.

Here, in reviewing the paragraph B criteria at step three, the ALJ determined Plaintiff has only a mild limitation in understanding, remembering, or applying information. A.R., pt. 1, at 21. Specifically, the ALJ noted Plaintiff "requires no special reminders to take care of her personal needs" and "is also able to follow both written and spoken instructions." *Id.* (citing *id.* at 238, 242, 266, 269). The ALJ determined Plaintiff had a moderate limitation in interacting with others. *Id.* at 21. The ALJ noted Plaintiff "has no problems getting along with family, friends, neighbors, or authority figures" and "has never been fired or laid off due to problems getting along with others." *Id.* (citing *id.* at 242-43, 269-70). The ALJ determined Plaintiff had a moderate limitation with regard to concentrating, persisting, or maintaining pace. *Id.* at 21. Specifically, the ALJ noted Plaintiff "could pay attention for 4-6 minutes." *Id.* (citing *id.* at 242, 269). The ALJ

13

determined Plaintiff had a mild limitation for adapting or managing oneself. *Id.* at 22. Specifically, the ALJ noted Plaintiff "has no problems with her personal care whatsoever" and "is able to care for pets, prepare simple meals daily, do laundry, go outside, drive, shop in stores and count change." *Id.* at 22 (citing *id.* at 238-40, 265-67). According to the ALJ, the "limitations identified in the paragraph B criteria are not a [RFC] assessment . . . . [But] the [RFC] assessment reflects the degree of limitation . . . found in the paragraph B mental functional analysis." *Id.* at 22 (internal quotations omitted).

At step four, the ALJ determined in Plaintiff's mental RFC that Plaintiff can "understand, remember, and carry out detailed, but not complex, tasks and instructions;" "make work-related decisions, accept instructions, and attend and concentrate for extended periods;" "frequently interact appropriately with supervisors, coworkers, and the general public;" and "respond appropriately to changes in a routine work setting." *Id.* at 22.

Plaintiff argues the ALJ's findings at steps three and four are at odds because moderate limitations in concentrating, persisting, or maintaining pace cannot be reconciled with the ability to carry out detailed, but not complex, tasks and instructions. Pl.'s Br. 17-18. This is not categorically true. *See Jones*, 2021 WL 2895867, at *1, 5 (affirming a mental RFC when ALJ determined plaintiff had "moderate limitation with regard to concentrating, persisting, or maintaining pace" and the RFC permitted "detailed, but not complex tasks"); *see also McDaniel*, 2020 WL 7687128, at *1, 3 (same). Plaintiff points this Court to some

evidence to support the "finding Plaintiff was limited in her ability to concentrate, persist, and maintain pace and should have been found incapable of performing detailed level work." Pl.'s Br. 18. But, again, Plaintiff failed to show that the ALJ's mental-RFC determination is not supported by substantial evidence.

Plaintiff cites *Voyles v. Comm'r of Soc. Sec. Admin.*, 2011 WL 825711, at *9 (N.D. Tex. Feb. 16, 2011) (Stickney, J.), for the proposition that moderate limitations cannot be accounted for by limiting a plaintiff's RFC to simple tasks. Pl.'s Br. 17. Plaintiff argues that *Voyles* held that a limitation to "simple routine, repetitive type tasks" did not fully account for the moderate limitations the ALJ found. Pl.'s Reply 2-3 (ECF No. 25) (internal quotations omitted) (quoting *Jones v. Astrue*, 2009 WL 1039437, at *2 (M.D. Fla. Apr. 16, 2009)). However, Plaintiff misconstrues the holding in *Voyles*. *See generally Voyles*, 2011 WL 825711. The *Voyles* court held that the ALJ erred in his RFC determination because the ALJ failed to contact the medical source for clarification after the ALJ expressed concern that he did not understand the medical opinion of that source. *Id.* at *9.

The *Voyles* court cites to *Jones* and other cases to provide examples that limiting a plaintiff to simple routine, repetitive type tasks did not fully account for those moderate limitations in those specific cases. *Id.* The *Voyles* court may have been implying that it was possible that simple routine, repetitive type tasks may not fully account for those moderate limitations in those specific cases. *See id.* However, *Voyles* does not state explicitly or by implication that limiting a plaintiff to simple tasks would be inappropriate in all cases as Plaintiff argues before this

15

Court. *Id.* Indeed, numerous other cases hold to the contrary. *See, e.g., Calvert v. Colvin*, 2016 WL 3906821, at *6 (W.D. Tex. July 14, 2016) (finding the ALJ's mental-RFC determination that Plaintiff could perform work limited to understanding, remembering, and carrying out detailed but not complex instructions and that Plaintiff has the ability to attend and concentrate for extended periods, is not contrary to the ALJ's finding that Plaintiff was moderately limited in her ability to maintain concentration, persistence, or pace); *Westover v. Astrue*, 2012 WL 6553102, at *9 (N.D. Tex. Nov. 16, 2012) (holding that a limitation to detailed but not complex instructions was not contradictory to the ALJ's finding that the plaintiff was moderately limited in his ability to maintain concentration, persistence, or pace), *rec. adopted*, 2012 WL 6553829, at *1 (N.D. Tex. Dec. 13, 2012); *De La Rosa v. Astrue*, 2012 WL 1078782, at *14-15 (W.D. Tex. Mar. 30, 2012) (holding that the ALJ's finding that plaintiff had a moderate limitation in concentration, persistence, and pace was properly accounted for in an RFC determination that claimant was able to understand, remember, and carry out detailed but not complex instructions); *Chadwell v. Astrue*, 2010 WL 3659050, at *11 (N.D. Tex. May 25, 2010) ("[T]he ALJ's finding that [the plaintiff] was moderately limited in her ability to maintain concentration, persistence, or pace is not inherently contradictory with an RFC assessment that [the plaintiff] could not perform work that involves complex instructions."), *rec. adopted*, 2010 WL 3658996, at *1 (N.D. Tex. Sept. 17, 2010).

As explained above, the ALJ's mental RFC determination is supported by substantial evidence and properly considered. Plaintiff's disagreement with the ALJ's RFC finding does not carry Plaintiff's burden of establishing that substantial evidence does not support the ALJ's determination. This Court cannot resolve conflicts of or reweigh the evidence. Accordingly, the ALJ appropriately considered and accounted for Plaintiff's limitations with regard to concentrating, persisting, and maintaining pace.

(3) <u>Plaintiff can perform her past relevant work.</u>

Plaintiff avers that she cannot do her past relevant work activity based on the ALJ finding that Plaintiff "retains the ability to perform sedentary work activity with the only limitation being limited to simple work activity." Pl.'s Br. 18-19. Yet, Plaintiff's past relevant work was as a reservations representative, which "is sedentary in exertional demand and is a semiskilled specific vocational preparation level (SVP) level 3 in nature, both as she performed it and as it is generally performed in the national economy." A.R., pt. 1, at 27 (citing A.R., pt. 1, at 229-30, 238-43; DOT 237.367-010); A.R., pt. 1, at 58-60. Therefore, according to Plaintiff, SVP level 3 is not "simple work activity." Pl.'s Br. 19.

The Court's "inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id.* (citation omitted); *accord Gutierrez v. Barnhart*, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (per curiam). "If supported by substantial evidence, the [ALJ's] findings are

deemed conclusive, and the court must accept them." *Jones v. Astrue*, 851 F. Supp. 2d 1010, 1015 (N.D. Tex. 2012) (citing *Richardson*, 402 U.S. at 390).

Here, the Court already determined the ALJ's RFC findings are supported by substantial evidence. Therefore, the question is whether Plaintiff can do her past relevant work with her mental RFC. The ALJ relied on the VE's testimony that Plaintiff "with the [RFC] depicted above, the individual retained the [RFC] to perform her past work as a reservations representative." A.R., pt. 1, at 27 (citing A.R., pt. 1, at 58-60). The ALJ also found that the VE's testimony was well supported, consistent with Plaintiff's description of the demand of the work, and consistent with the description of the work in the DOT. *Id.* at 27.

After reviewing and analyzing "all evidence of record," the ALJ determined that the record does "not sustain [Plaintiff's] allegations of a disabling impairment." *Id.* at 25. The ALJ stated that his RFC "assessment is supported by the objective medical evidence contained in the record." *Id.* And the ALJ stated, based on Plaintiff's RFC, Plaintiff is "capable of performing her past relevant work experience." *Id.* at 27. The ALJ appropriately considered and resolved conflicts in the evidence. Substantial evidence supports the ALJ's determination of Plaintiff's RFC, and the ALJ met the ALJ's burden to show Plaintiff can perform her past relevant work.

## Conclusion

Because the ALJ applied the correct legal standards, substantial evidence supports the ALJ's decision that Plaintiff is not disabled within the meaning of the

18

Social Security Act, and the ALJ met the ALJ's burden that Plaintiff can perform work substantial in the national economy, the Court AFFIRMS the hearing decision in all respects.

**SO ORDERED.**

September 30, 2021.

                                                                     _____
                                                                     REBECCA RUTHERFORD
                                                                     UNITED STATES MAGISTRATE JUDGE